# Appeal of Henry W. Patterson, Administrator.

Where a judgment is entered on the same day but after the death of the defendant debtor the legal fiction of a relation of judgments does not apply, and it is not entitled to priority of payment out of the proceeds of the sale of real estate over the claims of general creditors.

November 3d 1880.   Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY and STERRETT, JJ.   PAXSON and GREEN, JJ. absent.

Appeal from the Orphans' Court of *Allegheny county:* Of October and November Term 1880, No. 84.

Appeal of Henry W. Patterson, administrator of Alfred Patterson, deceased, from the decree of the court in the matter of the account of the said Alfred Patterson, administrator of S. M. Kier, deceased, of the proceeds of the sale of real estate of said decedent.

On the 12th of September 1874, Alfred Patterson brought suit in the Commom Pleas Court No. 1 of Allegheny county, against Samuel M. Kier, both of whom were then living, to recover the amount of two promissory notes on which the latter was liable as endorser.   On the 6th of October 1874, judgment was entered therein against the defendant for the sum of $10,020 in default of an appearance, &c., on a precipe filed by the plaintiff.   On the same day of the entry of this judgment S. M. Kier, the defendant, died, and from affidavits subsequently filed in the case it appeared that his death occurred at 5 o'clock in the morning, and that the judgment was not entered before 9 o'clock of the same morning.

On the 10th of October 1874, S. Schoyer, Jr., Esq., attorney for defendant, presented to said court an affidavit made by W. L. Kier, a son of the defendant, setting forth that S. M. Kier, died at 5 o'clock on the morning of October 6th 1874, accompanied with an affidavit of the prothonotary's clerk, that said judgment was entered between 9 and 10 o'clock of that day; and thereupon, on motion of said attorney, a rule was granted on the plaintiff to show cause why said judgment should not be vacated as improvidently entered, which rule on the 17th of the same month, was made absolute.   But afterwards, on the 9th of January 1876, on motion of Alfred Patterson, the order making said rule was rescinded: and on the 10th of March 1876, the motion to strike off said judgment was withdrawn by Mr. Schoyer, defendant's attorney, he being at that time also the attorney for Mrs. Nancy B. Kier, then the admin-

[Patterson's Appeal.]

istratrix of the estate of S. M. Kier, deceased, and who, on the 17th of October 1874, had, on Mr. Schoyer's motion, been substituted as defendant.

On the 15th of April 1879, Cyrus Clark, Jr., the present administrator of said estate, William Donnell, and other creditors, applied to said court to have the said order of January 9th 1876, rescinded, and the said judgment set aside; but the rule granted on this application, after argument by counsel, was discharged on the 31st of May 1879.

Mrs. Nancy B. Kier having, on the 23d of May 1877, been removed as administratrix, the said Alfred Patterson was appointed in her stead as administrator *de bonis non*, of the said S. M. Kier, and as such administrator he afterwards sold certain real estate of the decedent, situated in Allegeny county, under an order of the Orphans' Court; and before filing his account of said sale Mr. Patterson also died on the 11th of December 1878. But his administrator, Henry W. Patterson, filed such an account after the death of the said Alfred Patterson; and this is the account now in controversy, the matter in dispute being the credit taken in said account for the sum of $8694.53 appropriated to the aforesaid judgment. Exceptions were filed to the allowance of such credit by Cyrus Clark, Jr., the present administrator *de bonis non*, of the said S. M. Kier, deceased, and also by a number of the creditors of said estate, on the ground, as they contended, that said judgment was not entitled to priority over other debts of the decedent in the distribution of the fund. These exceptions were afterwards argued and were sustained by the court; and on the 8th of October 1879, the court entered the decree from which the appeal in this case was taken, surcharging Alfred Patterson, the accountant, with the sum of $8694.53, and ordering that this amount be paid to Cyrus Clark, his successor.

The following was the opinion of the court:

" The only question which was pressed upon the court in this case was, whether the judgment of Alfred Patterson, entered against S. M. Kier after, but on the day of the death of the latter, was entitled to priority of payment out of the proceeds of the sale of real estate over the claims of general creditors. It was claimed on behalf of Mr. Patterson; (1) That his judgment could not be attacked collaterally; it appeared upon its face to have been entered against Mr. Kier in his lifetime, and must be presumed in this proceeding to have been in fact so entered; and (2) that the lien of his judgment related by a legal fiction to the beginning of the day on which it was entered, and therefore antedated the death of Mr. Kier, and is entitled to priority of payment by reason thereof.

" 1st. A judgment and the subject of its grasp are distinct things, and may be so treated without impairing the record. The judgment itself as such cannot be attacked collaterally except for collusive

fraud or want of jurisdiction in the court which pronounced it; but its lien may be attacked in a variety of ways. Thus in Sankey v. Reed, 2 Jones 95, parol evidence of an agreement between the plaintiff and defendant was admitted to restrict the lien of the judgment. So in Bank v. Gorman, 8 W. & S., 309, it was held that it was competent to show at what time of the day a voluntary assignment was made, with a view to affect the lien of a judgment. The same point was ruled in Boyer's Appeal, 1 P. F. Smith 43. So in Ex parte D'Obree, 8 Ves. 83, Lord Chancellor Eldon held that it was competent to show whether an act of bankruptcy was committed before or after a judicial act. To the same effect are Thomas v. Desanges, 2 B. & Ald. 586, and Sadler v. Leigh, 4 Camp. 197. So in Lanning v. Pawson, 2 Wright 486, circumstantial evidence was held admissible to show that the defendant was in fact dead at the time of the entry of the judgment.

"2d. It has long been the settled law of Pennsylvania that the rights of creditors become fixed the instant of the debtor's death with respect to the distribution of decedent's estate; and that no creditor can by any subsequent act deprive his fellows of those rights: Leiper v. Levis, 15 S. & R. 108 ; Prevost v. Nichols, 4 Yeates 487 ; Turner v. Hauser, 1 Watts 422 ; Bosler v. Bank, 4 Barr 34 ; McClintock's Appeal, 5 Casey 360 ; Kelly's Appeal, 27 P. F. Smith 232 ; Roumfort v. McAlarney, 1 Norris 193. The twenty-fifth section of the Act of February 24th 1834, Purd. Dig. 422, pl. 89, makes 'all judgments which at the time of the death of the defendant are liens on his real estate * * * rank according to their priority at the time of such death.' The twenty-second section of the same act, Purd. Dig. 421, pl. 85, provides for 'all debts other than these :' Ramsey's Appeal, 4 Watts 73. In the absence of provision for the priority of lien of judgments entered subsequently to the 'time of death,' it must be presumed that no priority was intended to be given. *Expressio unius exclusio alterius.* And without statute it cannot exist. 'It is a fundamental doctrine in the Pennsylvania law of decedents, that the legal character and effect of a debt due by a decedent's estate is to be collected from what was its condition at the decease of the debtor. If it was specialty or simple contract, then such it continues, so far as respects the order of its payment, although it has passed into a judgment in a suit brought by the creditor against the executors or administrators of the deceased :' Wootering v. Stewart, 2 Yeates 483 ; Moliere's Lessee v. Noe, 4 Dall. 450 ; Penn Bank v. Stambaugh's Adm'rs, 13 S. & R. 399 ; Fryhoffer v. Busby, 17 Id. 121. This doctrine holds equally good whether the question to be determined be, whether a debt is entitled to rank in the order of payment as a judgment ; or, whether an admitted judgment is or is not a lien. The *rationale* of each is the same, viz., that at the death of the debtor his estate, real and personal, stands pledged by operation of

law for the payment of his debts; that the actual appropriation of his estate for this purpose, although postponed for reasons of convenience, is supposed to be made immediately on his decease, consequently the condition of claims against him as they stood at his decease are to be regarded; no particular creditor, who may have lost an advantage by laches during the lifetime of the debtor, being permitted to regain his loss at the expense of others, who in abstract equity stand equal to himself.

"For example, a judgment-creditor who has, before the death of his debtor, suffered the lien of his judgment to expire by effluxion of time; a judgment-creditor who during the life of his debtor has never proceeded to attach the lien of his judgment to after-purchased property not bound by it; or, as in this case, the holder of a quasi judgment, to the perfection of whose character as a judgment binding on land a step is wanting which ought to have been taken during the life of the debtor: in all these cases the creditor's priority of lien is gone. Nor is there any particular hardship in this, more than the creditor might have suffered from his laches, even living his debtor. If in either of the enumerated cases the judgment-creditor had sold his land, the purchaser would have held it discharged of the lien of the judgment; why then, if he should die while judgments against him stand in this condition, should not his general creditors occupy as favorable a position as a purchaser under him? Bank of North America v. Fitzsimmons, 3 Binn. 342; Patterson's Estate, 1 Ash. 336, per President King.

"Is the fiction of relation of judgments consistent with this 'fundamental doctrine' of the law of decedent? A satisfactory answer to this question may be found in the opinion of the court in Leiper v. Levis, 15 S. & R. 108. That was a case in which an execution had been issued after the death of the debtor, and was sought to be made effective by the fiction of relation to the first of the term in which the debtor had died: but the principle of the two cases is the same. Rogers, J., said: 'The practice of Pennsylvania is too well settled to be now shaken, that a judgment may be entered or execution issued after the death of the defendant, and that the execution has relation to the first day of the preceding term. This legal fiction works no injustice between the parties themselves or their legal representatives, and may be justified by the consideration that the practice facilitates the collection of debts certainly due, from an estate acknowledged to be solvent. If we were now, for the first time, to consider whether legal relations and legal fictions should be introduced, it would perhaps be wise to inquire into, and sift most minutely, the foundation on which they were supported. This, however, is not a case where rights of the parties only are involved, but it concerns creditors and the responsibilities of administrators. It is the case of an insolvency, and an attempt, by means of a legal fiction, to deprive other creditors

of a vested right. * * * Fictions were not intended to do injustice, nor should they be permittted to interfere with the operation of a most beneficial statute.' The court then recites the eleventh section of the Act of 1794, which was substantially re-enacted in the twenty-second section of the Act of 24th February 1834, and goes on to say: ' The right of the creditor became vested to be ·paid in the order pointed out by the act. * * * What, then, is the matter submitted to the court but an attempt, by means of a legal fiction, which was never in the contemplation of the legislature, to change the rights of creditors by mere issuing of an execution after the death of the intestate. Establish the principle contended for by the plaintiff, and it would be unsafe for an executor to pay the funeral expenses. * * * A creditor with a warrant of attorney to confess a judgment would have it in his power to sweep the whole estate in prejudice of debts of equal or superior .degree, contrary as I believe to the manifest interest and policy of the Act of 1794.' The same principle has been applied in the analogous cases of bankruptcy and voluntary assignment, in which evidence of fractions of a day is admitted with a view to defeat the lien of a judgment : Ex parte D'Obree, *supra ;* Bank *v.* Gorman, *supra ;* Boyer's Est., *supra.* The time of death of a debtor is therefore an important element in the distribution of the estates of decedents. It is a question of fact which determines the relative rights of creditors, not a fiction ; and the admissibility of evidence with respect to that fact must obviously be governed by the exigency of each case. It is competent to show the day or fractions of a day as circumstances seem to require. It is the instant of death that fixes the rights of creditors : McClintock's Appeal, *supra.* And judgments afterward, whether on the same day or not, gain no priority, by virtue of their entry, over the claims of general creditors. The only effect of such judgments was to liquidate the amount due and prolong the duration of the claim upon which it was based : Pitts. and Steub. Railroad Co's Appeal, 2 Grant 151."

From the decree of the court this appeal was taken.

*Thomas C. Lazear,* for appellants.—Neither the defendant nor his .representatives will be permitted to impeach a judgment, for error in a collateral proceeding; it can only be done by writ of error or by a direct application to the court in which it is entered to set it aside. .It has been repeatedly held that the validity of a judgment cannot be inquired into in the distribution of the proceeds of a sheriff's sale, and the principle applies with equal force to the proceeds of an administrator's sale : Meason's Estate, 4 Watts 341 ; Thompson's Appeal, 7 P. F. Smith 175 ; Butterfield's Appeal, 77 Id. 197. And coming more directly to the case in hand are Yaple *v.* Titus, 5 Wright 195 and Warden *v.* Tainter, 4 Watts 279, holding that a judgment rendered against a person

15 NORRIS—7

after his death cannot be attacked collaterally. We submit, therefore, that even granting the position (which we deny) that the Orphans' Court was authorized *to go into the inquiry* and admit parol evidence to show whether the judgment was anterior to the time of Mr. Kier's death, yet after the evidence was in and it was shown by it that he did not die before 5 o'clock of the morning when the judgment was entered, the rule of law that judgments become liens from the first hour of· the day, should have settled the question of both the validity and priority of the judgment : Boyer's Appeal, 1 P. F. Smith 437 ; Metzler *v.* Kilgore, 3 Barr 247. In Sims *v.* Hampton, 1 S. & R. 411, Chief Justice TILGHMAN stated the rule to be, "that there shall be no fractions of a day except in a case of necessity." To the same effect is Steele *v.* Taggart, 1 Bro. 20; Emerick *v.* Garwood, Id. ; Mechanics' Bank *v.* Gorman, 8 W. & S. 209.

*S. W. Cunningham,* for appellee.—The ·manifest ·intention of the legislature, as interpreted by this court, was that there should be a strong. and clear distinction between the two classes of claims, in the distribution of the proceeds· of real estate affected thereby. See Ramsey's Appeal, *supra.* Creditors are more to be favored than heirs. At death all claims are divided into two classes, those having special and those having general liens. It is true that the language generally used is that judgments against personal representatives have no priority ; but this means, we think, judgments entered after decedent's death. If Samuel M. Kier had died one day earlier, which would have been the return-day of the writ, and judgment had been entered as it was entered, surely the judgment would have had no priority. It would have fallen within the class of judgments against personal representatives who would have been substituted on application under the twenty-sixth section of the Act of 1834, Purd. Dig. 424, pl. 94, on the ground that the case was an action depending at the time of the decease. Just so in the case at bar, the administratrix was substituted, and for the same reason.

The reasons for the distinction between the classes would place all judgments entered after the death in the same class.' There is no difference in principle, whether the judgment be entered upon the same day of the death or afterwards, when the· suit is brought before the death. The " time of the death" is what fixes the class, and that is a question of fact. In the language of McClintock's Appeal, 5 Casey 360, it is " the instant of his death." The utmost diligence after the debtor's death can avail nothing to secure priority as against others in the same position : Patterson's Estate, 1 Ash. 336. Hence evidence is admissible to show the exact time of the death, by virtue of which all general creditors acquire rights.

This will prevent the injustice of permitting one of the general creditors, by a subsequent act, to get the advantage of his fellows.

Surely a simple rule of policy or a fiction of law adopted for convenience in cases where no rights are in any way infringed upon by it, should not stand in those cases where it would set at naught the clear intention of the legislature, subvert the whole policy of the law with reference to the estates of decedents, and destroy vested rights. Moreover, if the judgment in this case be held to date from the first moment of the day of entry, so should the liens arising from the death of the decedent relate back to the same moment. In that case justice would be done; all would attach at the same moment and share pro. rata. Equity would at least require this.

The judgment of the Supreme Court was entered, November 15th 1880,

PER CURIAM.—We adopt the opinion of the learned judge of the court below, and affirm the decree he has so well stated.

Decree affirmed, and appeal dismissed at the costs of the appellants.